I'd like to reserve two minutes, ma'am. All right. Go ahead, please. The Police of the Court, my name is Lon DeHill. I'm appearing here on behalf of the appellants and the plaintiffs and the underlying cause of action. This case is before the court primarily because of incorrect substantive law. We, in Montana, we have this saying that this isn't our first rodeo with State Farm. We've been involved with extensive state court litigation where we've sued the agent as well as State Farm. This case was filed in federal court in order to obtain class certification. And that was the primary purpose of filing. And the class certification has now been subverted because of incorrect determination of Montana substantive law. I want to go into a couple things about UM and UIM coverage. When I say UM, I'm referring to uninsured motorist coverage. When I say UIM, I'm referring to underinsured motorist coverage. I think it's important for the court to have some history on those coverages because they play into the issues before the court. UM coverage has been around for decades. It was established by the insurance industry to protect their insureds in circumstances where they were injured by tort feasors that had no insurance coverage. So it was a means to provide protection. Let me ask you a question. If I look at your amended complaint, it seems like you're kind of conceding that you had to prove a special relationship because you have all this information that says State Farm trains its agents and provides special knowledge, skill, and expertise in insurance, insurance coverage, and the law of insurance coverage. Such agents held themselves out to the plaintiffs and the public as persons who possess special knowledge, skill, and expertise in insurance, insurance coverage, and law of insurance coverage. I mean, throughout your whole complaint, you say they advertise their expertise. Plaintiffs relied on their expertise. And in every single plaintiff, you say, oh, this insurance agent had specialized insurance knowledge. So you don't outright say there's a special relationship, but you have all of the language to establish a special relationship, and that's how you survive the first motion to dismiss. If you didn't have that language in there, I suspect you would have been dismissed at the first get-go. Well, Your Honor, a special relationship is not a creature of Montana substantive law. And what we're pleading there is simply what the factual circumstances were, that our clients and those similarly situated go to a State Farm agent. And the State Farm agent, of course, has expertise. And they were relying on that expertise to provide them with the services that they were requesting. Well, it seems to me that the Montana Supreme Court has been quite clear in saying that, generally speaking, an insurance agent owes only the ordinary duty of care. And it seemed to me that you had previously conceded as much, that generally speaking, there's only the ordinary duty of care and that the ordinary duty of care means to, in the case of an insurance agent, to procure the coverage that the client requests. Is that not, I mean, it seems to me that's fairly well established in Montana law. I think you've hit, Your Honor, I think you've hit upon an important issue here that actually caused the district court to divert from the real substance of the issue. And that is you use the word procurement. Procurement is a contract claim. And there's plenty of case law on the fact that the insured goes and asks for certain coverage and doesn't get it. That isn't what our case is about. Our case is about professional negligence. To get negligence, you have to establish that there is a duty first, right? And as far as I can tell, the Montana Supreme Court has said the only duty that an insurance agent owes is a duty to get the coverage that is requested unless circumstances show, you know, they'd leave open the possibility for special circumstances to create a heightened duty. But it seems to me then that turns into a factually specific case where there has to be shown that the client asked for something different than just get me this coverage or that there had to be a special relationship, some other reason to impose more than the ordinary duty. Your Honor, I disagree with your statement as to what the Montana law is. You use the word, again, ask for. Let's go over, if I may, I want to go through the elements of professional negligence because I think that that leads us to some of the confusion that the district court had. Well, let me just ask the gentleman. Is your position that the insurance agents must always explain and offer UIM coverage? I mean, if I walked into a State Farm office and say I want auto coverage, are you saying the professional obligation of the State Farm is to explain and offer to me the UIM coverage as part of what they're doing? We are not, Your Honor. Let me explain why that is, okay? So we have to get to what this duty is, okay? The professional claim that we're making for professional negligence, we can all agree that there would be four elements involved, a duty, a breach of duty, cause and damages. What we really have to concentrate on and what oftentimes gets lost and confused is the fact that those last three elements, breach, cause, damages, are factual questions, factual questions for the jury. The breach of... Right, we understand, but this case was resolved by Judge Morris Blue on the legal question of duty. Absolutely, Your Honor. And I'm confused because you just said you don't think that agents have an absolute duty to offer UIM insurance even when it's not asked for. So what is your contention about the duty? Okay, thank you, Your Honor. That's State Farm's argument that we have an absolute, that we argue that there was an absolute duty. We have never argued that there was an absolute duty. What was the agent's duty, in your view, in this case? The agent had an obligation to act in a reasonable manner under the circumstances. For example, we had filed a supplemental authority that the court has just received here in the last couple of weeks. Exactly a month ago, the Montana Supreme Court entered the decision of Kamen, which we have supplied supplemental authority to the court for. But that doesn't apply to insurance agents, right? I mean, I think you're, at least in your brief, it seemed like you're saying your best argument is Section 299A. But the Montana Supreme Court has had at least multiple opportunities, at least in Monroe and Bailey, to extend that to insurance agents, and they have declined repeatedly, correct? No, that's not correct, Your Honor. What says Kamen applies to insurance agents? Montana has adopted 299A when it comes to medical malpractice issues. And you're referring to the Cosgrove decision, and in that decision it was already determined that there was UIM coverage. It was a question of the amount of coverage. I'm sorry to interrupt you. I think what my colleagues and I are trying to get at is what you think the duty is and what authority do you have for that duty? What is the duty? When your clients came in talking about MS and needing good medical coverage, talking about vandalism, what in anything in the complaint says that the agents in this case had a duty to explain UIM coverage? Your Honor, they don't have that. That is not a part of duty. That's the confusion here. Back to the Kamen case. If you look at what we said in our supplemental authority, and I can just read it right here. It's before the court in the record. It is the duty, and then we've interpolated the insurance professional. It is the duty of a licensed insurance professional to use the skill and learning ordinarily used in like cases by other insurance professionals in good standing practicing in that specialty. That is your claim, that insurance professionals' duty should be the same as doctors. But you don't have any authority for that, right? That just says this is what appellants contend. I'm looking at your 28-J letter. Your Honor, the authority is in the Delaney case. The Delaney case established the fact that that very same language is in the Delaney case, which states that an agent, in that instance, it was a question of the amount of coverage, and they said that it's determined by the circumstances that exist at the time. Right, but didn't the Montanans report say we have never recognized a professional duty on the part of insurance agencies? I suppose they went and said we're not excluding the possibility that there might be circumstances under which a heightened duty would arise. But as far as Montana has been concerned for decades, the duty of an insurance agent is the ordinary duty of care. And I think it stops right there, Your Honor. It's an ordinary duty of care. It's not a duty beyond that. It's an ordinary duty of care. I'm very confused because I thought you were just arguing it should be the professional duty of care in which there's all sorts of heightened affirmative duties. Well, let's look at our expert testimony. Back to the— I guess I want, before you move on to expert testimony, I'm trying to understand what exactly are you arguing. Are you conceding that an insurance agent only owes an ordinary duty of care, but then you're trying to say that the ordinary duty of care includes all these other things? Well, we have to look at what would be our burden here. Our burden is to show breach of the standard of care. All these cases support one thing. The only way that we're going to advance a case, be it a medical malpractice case, a lawyer malpractice case, negligence for a dentist, negligence for an architect, a chiropractor, universally, the way that has to be done is standard of care. What is standard of care? Standard of care is what experts say. What do our experts— That goes to the breach, but there had to be a duty first. Or in the case of Delaney where they said there needed to be— I believe it's Delaney, I could be getting the case name wrong, but they said they rejected the claim, the Montana Supreme Court rejected the claim for lack of an expert. But in that case, there was not— there were special circumstances where the client said, I need you to come inspect my business property because I've expanded and I don't know what coverage to get. And the court said, well, under that circumstance, a special circumstance where you did more than just say, get me A, B, and C insurance coverage, there was a question about how a reasonable professional insurance agent would respond to that kind of request. And they said you need an expert to show that. But that's not—I think in that case, there was a special circumstance that gave rise to a heightened duty. Well, there's no need for a special circumstance to have a duty. The duty is the general duty that we just talked about. It's a duty to act with that skill and learning ordinarily used in like cases by the expert. Do you have a Montana case where they define the duty of an insurance agent that way? Excuse me? Is there any Montana case that defines the general duty, the ordinary duty of an insurance agent in the way that you're defining it? Well, I think that you have to—well, to answer your question specifically, did the Montana Supreme Court adopt 299A and say that it applies to insurance agents, I would say no, they haven't. But it doesn't—it isn't a giant leap to get there because if you look at the Delaney case where they're talking about the fact that what happened under the circumstances is what controls, and then you have to look at our experts. And that's back to the point that I made. When you have a—our burden of proof here comes through our experts, and what are our experts saying is the standard of care? I'm talking standard of care as it relates to this general duty to act in accordance with the skill and training of a person in your similar circumstances. What is our standard of care that our experts are universally saying applies under these circumstances? Number one, explain the coverage. Explain UM and UIM coverage. Offer the coverage. Advocate for the coverage. And fourthly, if they do not want the coverage, have them sign a rejection. Now, that's the standard of care evidence that we are advancing from four Montana insurance professionals from different aspects, different companies. And universally, that's their position. I mean, if you look at the— You're over your time by one minute and 27 seconds, so if you could wrap this up, I'll give you two minutes for rebuttal. Excuse me. What was that? Wrap this up. You're over your time by a minute and 38 seconds, and I'll give you two minutes for rebuttal, but I'll let you conclude this point. Let me just close with this aspect. I would challenge Mr. Mosley to come before you and advise you as to where in Montana substantive law there is any special relationship, and if it is, what is it? I mean, when the district court decided special relationship in the summary judgment, they didn't give us any elements of what it includes. And on top of that, we have the 101 Ocean case that totally reversed the Cintros case that they relied on. So I would close with that and then have the rebuttal time. Thank you, Your Honor. All right, thank you. You went over time two and a half minutes, but we'll give you two minutes for rebuttal. May it please the Court. Jeremy Mosley of Spencer Fane on behalf of Defendant State Farm Mutual Automobile Insurance Company. This case is about plaintiff's attempt to use the judiciary to create an absolute duty to offer and explain optional underinsured motorist coverage, or as we just heard, universally the experts say you should always do that, even if it's not couched as an absolute duty, when the Montana legislature has rejected doing anything of the sort or placing any obligations around optional underinsured motorist coverage on three separate occasions. Despite that clear legislative intent, plaintiffs even state in their reply that, quote, UIM coverage is not optional, end quote. The district court recognized that is contrary to Montana law and correctly granted summary judgment, and this court should affirm for three reasons. First, there is no absolute duty to offer and explain an optional coverage in Montana. Second, the district court correctly recognized regardless of a special relationship or not, it requires a case-specific, fact-intensive inquiry to address what type of relationship and therefore what type of duty could arise, and therefore class certification is not appropriate. And third, the district court correctly under Rule 16 managed the litigation and did not abuse its discretion in denying either the motion to compel discovery or to amend the complaint that would have added a brand-new class representative and a completely different type of class representative for prospective relief based on a plaintiff who was choosing not to purchase this coverage that they claim is so important. Why don't you respond to the plaintiff's argument that for this special relationship point, you're having to rely on out-of-state law, whether it's New Hampshire or Florida. Why don't you respond to that, that there isn't anything in Montana that specifically establishes this special relationship with the criteria that's been established in other states? The district court did look to New Hampshire for ideas about what could be in a special relationship. The important thing, though, is that without that special relationship, plaintiffs' claims fail already, and that is the lifeline that the district court threw to the plaintiffs, was if we extend Montana law to allow for the potential of a special relationship, then if you can develop the facts about that relationship, there might be a duty to offer and explain or advise about optional coverages. Would it be fair to say my understanding of what Judge Morris determined Montana law to be, my understanding of reading the cases, Montana is basically that in the ordinary case, as a general rule, there's only an ordinary duty of care, and for insurance agents, that means get the insurance coverage that the client requests, and that's the ordinary duty of care, but that there could be special circumstances that create a duty beyond that. And so I guess I would say Montana doesn't use the exact words special relationship, but it's more or less the same idea of some special circumstance, a special request, a special relationship, a representation. They never cabin the set of circumstances that could give rise to a heightened duty, but they suggest that there could be case-specific circumstances that create a heightened duty. Is that a fair characterization, in your opinion, of Montana law at this point? That is correct, Your Honor, and it starts with the Fillinger case, which found that basically you start by looking at the nature of the relationship. The issue there was is the insured required to read their insurance policy, but even then the court started from a principle of the nature of the relationship between the insured and the agent is the starting point. And when you move on to the Bailey case, which is the most on point, what the court did there is said the duty that arises in the first place is tied to what the insured requested as a starting point and then how the agent responded. Quoting from Bailey, because that is the key for this case, says once an insured informs an insurance agent of his insurance needs and the agent's conduct permits a reasonable inference that the agent is highly skilled in this area, an insured is justified in relying on an insurance agent to obtain the coverage that the agent has represented he will obtain. That is essentially a procurement issue. When you go to your insurance agent and ask for a particular coverage and ask for coverage and the agent responds and says, yes, I'll get you that coverage, that does not give rise to a contract claim as opposing counsel claims because the Montana Supreme Court has actually said it's a tort claim in Bailey and the tort claim is whether the agent was negligent in performing their duty to obtain that requested coverage. Each of the cases that the Montana Supreme Court has looked at has focused on the crux of the inquiry has been the nature of that relationship starting with what did the insured ask and what did the agent allegedly do in response. Delaney is the same way. Delaney actually dealt with a plaintiff or an insured saying, I want enough coverage to cover my building, I want adequate coverage and the agent allegedly said that they would do so and therefore you had an ask and a response that led to a duty and only then because it was a more nuanced ask, if you will, the court even pointed this out in Delaney, it wasn't as simple as, well, did you ask for a specific type of coverage like liability coverage and you failed to get it. It was, I got the type of coverage I asked for, that's in the layman's understanding, I asked for this kind of coverage, I got it or I did not. Instead it was, I got the coverage I wanted but I asked for enough to cover my business and I didn't know how to value my business so I expected you to value my business. And so now it was, well, in the context of that ask for how much insurance essentially that the agent allegedly responded and agreed to provide, now it turns to needing expert testimony. But the crux of the matter always comes back to the duty first. The duty has to arise before you even look at whether there is a scope of duty or what the standard of care would be and therefore whether it requires expert testimony. What should we do with the comment in Monroe by the Supreme Court that turning to the duty element of the negligence claim, they say, without concluding that a professional duty of care should never be applied to insurance agencies, we acknowledge that no such heightened duty of care has yet been recognized. So they seem to leave open the possibility of a professional duty of care, say we've never ruled that out. So why isn't that a question we should ask the Montana Supreme Court? Well, we don't need to ask the Montana Supreme Court because I think the District Court correctly recognized how that would be presented to the Montana Supreme Court, which is there is no absolute duty, meaning in every circumstance no matter what. We know that the Montana legislature under the law is presumed to know the case law, and it was after that case in 2010 that they three times then rejected elevating underinsured motorist coverage to have the same protection or requirement to offer it under the statute that uninsured motorist coverage has. So from that we know that the legislature in that sense has spoken and said we're not going to elevate underinsured motorist coverage the way that plaintiffs want to. You previously did request certification to the Montana Supreme Court, so explain your change in position. Yes, Your Honor. At that time what State Farm's position was there is no special relationship test. That's an extension of the law. We don't need to go there. They fail under the ordinary duty of care, and therefore we should be able to end this case now, and we want the Montana Supreme Court to weigh in on that. Why did you ask for certification? Well, that's why, was to see if the Montana Supreme Court would even adopt this test in the first place, the special relationship. Where we are now, though, is that special relationship test doesn't matter because plaintiffs couldn't meet it. And so what happened was the District Court said, well, I do think a special relationship could be possible under Montana law, so I disagree with you, State Farm. And I already know what the answer's going to be. At this stage of the case, the answer's going to be it depends. Let's see what the facts are, see what those elements are, and then we can see what type of relationship test would apply. What ultimately happened here in discovery, after over a dozen depositions, including all of the plaintiffs, multiple agents, and others, plaintiffs could not establish any type of special relationship in the first place. And therefore, the undisputed facts in this record are there is no special relationship. So even with that lifeline being thrown at the outset of the case by the district judge, it ultimately doesn't matter here because if the Supreme Court agreed and adopted a special relationship test, plaintiffs' claims would all fail. If the Montana Supreme Court rejected a special relationship test and kept the ordinary care test only, plaintiffs' claims would all still fail based on the undisputed facts in this record, including two plaintiffs who never spoke to their agent whatsoever and, in fact, relied on third parties completely to make their insurance coverage choices for them. At the crux of plaintiff's case, whether they want to avoid calling it an absolute duty or not, still comes back to the fact that they are saying anytime somebody asks for insurance coverage, the duty of care is to offer, explain, advocate, and obtain a rejection form for underinsured motorist coverage. And the problem with that absolute duty is, first of all, the Montana Division of Insurance has presented their opinion of Montana law. It's in the record and indicates they say this is a purely optional coverage. It doesn't have to be offered, and you don't have to reject it in writing. That's the state of Montana law right now. Plaintiffs are asking this court to do what the Montana legislature refused to do on three occasions, and this court should not do that. It should affirm the district court on that point. Does anyone have any further questions? Okay, we don't have any further questions. If you'd like to wrap up, please. Okay, did you want me to discuss the court's discretion for class certification and the Rule 16 issues? I don't, but let me see if my call has been adequately briefed. Then thank you for your time. Thank you. All right, Mr. Dale, two minutes. Thank you, Your Honor. I think we have clearly established that Montana law is in question here as to what a duty of a professional insurance agent is, and so we have requested for... Why didn't you move for certification on that issue much earlier in your litigation? The certification question? Yes. The certification question would be, what is the duty of a professional insurance agent? Right, but when part of Judge Morris's ruling was it's too late by the time you asked for certification. So why didn't you ask for certification of that issue the first time you had the opportunity to do so? Thank you, Your Honor. Let's look at the history. You opposed certification, didn't you? To answer your question, first of all, we had a magistrate that entered findings and recommendations and included in those the special relationship test adopting the Sintros case from New Hampshire as the controlling substantive law. We objected to that, and then the Article III judge totally ratified the findings and conclusions. So then we're stuck with that. And at that time, State Farm said, we want you to certify the state law question to the Oregon Supreme Court. My understanding is that you opposed certification at that time. Is that correct? That's correct, Your Honor, but it was the way that they were asking the certification because they were asking to basically adopt a special relationship test that we felt was foreign to Montana law. So you also didn't like the interpretation of Montana law. Why didn't you say, we also want to certify, but we want the Supreme Court to come out the other way? But you could have both agreed to ask the Montana Supreme Court, but instead you opposed it. You seemed quite satisfied, at least at the time, with the district court's interpretation of Montana law. The timing, I believe the timing there was in the course of the objection that was before the court for the Centro special relationship test. But let me just answer your question about the timing for certification later on. Here's what happened. The Centro's case was basically totally overruled by the New Hampshire Supreme Court. In the 101 Ocean case that we've cited in our briefs. And so what is this special relationship test? What are the elements to it? I mean, if you look at Judge Morris's decision, he doesn't give anything. It's just that, oh, it's special relationship. Well, what is it? What elements are there? I mean, we've got a moving target here. And so we then said to the court, ask for reconsideration on the basis of the 101 Ocean decision, saying all this is out. The New Hampshire court said those things that we said in Centro's. Well, we disagree with you on the 101 Ocean. Or at least I do. I disagree that it completely overturned Centro's. But I'll let you wrap up, please. You're going over your time again. Let me get to the. So at that point, we're down the road. And then at that point, we did ask for certification because that was our only option there. We have to have clarity for Montana law. And I would submit that we don't have that clarity at this particular time. And so certification is more than appropriate to the Montana Supreme Court. Let the Montana Supreme Court decide what substantive law ought to be. And it shouldn't be New Hampshire law. I mean, I think that's clear. No case has supported a special relationship under Montana substantive law. All right. Thank you. You're five minutes over your time. Thank you for helpful arguments from both counsel. We're going to take a ten-minute break, and then we'll call our last case. Thank you very much. All rise.
judges: Gilman, KOH, SUNG